MORSE *v.* CHENEY, Ex'x, etc.

*(Circuit Court, D. Connecticut.* November 10, 1884.)

LEASE OF THEATER SECTION—CONSTRUCTION—IMPLIED COVENANT—EVICTION—RIGHT TO RECOVER PART OF CONSIDERATION.

Lease of a section and seat in a theater construed, and *held* that there was no implied covenant by the lessor that, during the regular annual theatrical winter season of about 40 weeks, public performances or entertainments should be given in the theater, to which the lessee should have access under the lease, or that, if the lessor did not run the theater for 40 weeks in each year, but discontinued it and ceased to operate it, he was to pay back to the lessee a due proportion of the consideration; *held*, also, that the lessee was not entitled to recover a part of such consideration because of an eviction of the lessor and a closing of the theater on account of his failure to pay the ground rents due from him under his lease of ground on which such theater was erected.

At Law.

*Ranney & Clark* and *C. J. Cole*, for plaintiff.

*C. E. Perkins* and *John C. Parsons*, for defendant.

BLATCHFORD, Justice.   On the first of February, 1875, Arthur Cheney, the defendant's testator, executed and delivered to Leopold Morse, the plaintiff, a written instrument of lease, under seal, in the words and figures following:

"Know all men by these presents, that I, Arthur Cheney, of Boston, in the commonwealth of Massachusetts, in consideration of one thousand dollars to me paid by Leopold Morse, of Boston, in the commonwealth of Massachusetts, do hereby grant, demise, and lease unto the said Leopold Morse, and his executors, administrators, and assigns, the section and seat numbered twelve in the orchestra of the new theater building recently erected by me in said Boston, and known as the Globe Theater, together with the right to use, occupy, and enjoy the said section and seat, with the appurtenances, either by himself or by any other respectable and well-behaved person, and with the right of ingress and egress to and from the same, until the tenth day of June, in the year one thousand eight hundred and ninety-two; subject, however, to all reasonable regulations for the care and management of said theater, and for the conduct of the audience therein, and to the following limitations, provisions, and restrictions, namely:   Said section and seat shall not be used, occupied, and enjoyed as aforesaid except when the said theater shall be open for public performances or entertainments during the regular theatrical winter season of about forty weeks in each year, and then only when the grantee, his executors, administrators, or assigns, shall, before nine o'clock of the evening of the day next preceding the day of every such performance or entertainment at which he or they intend to be present and to occupy the said section and seat, procure from the box-office of said theater a pass or ticket for entrance to said seat for such performance or entertainment, which pass or ticket shall be furnished without charge, on application, either in person or by written order, made at such office at the regular office hours, and shall be delivered up by the bearer, upon entering the theater, to the door-keeper, or to such other person as shall be then and there duly authorized to receive the same.

"Provided, nevertheless, that in case of the substantial destruction of said theater by fire or by other unavoidable casualty, all estates, rights, and easements, granted or created under or by virtue of this instrument, shall terminate and forever cease, and I, and my executors, administrators, heirs, and assigns, shall thereupon be fully released and discharged from any and all liabilities to the grantee, his executors, administrators, heirs, and assigns, arising from or on account of these presents: and provided further, that if I, or my heirs or assigns, shall at any time elect to discontinue the use of the said building as a theater and to devote it to other purposes, I or they shall have the right so to do on paying or tendering to the grantee, or his executors, administrators, or assigns, such proportion of the above-mentioned sum of one thousand dollars as the time then to elapse before the aforesaid tenth day of June, 1892, shall bear to the full term of eighteen years; and all estates, rights, and easements hereby granted or created shall thereupon cease, and I and my executors, administrators, heirs, and assigns, shall be fully discharged and released as aforesaid.

"It is understood and agreed that, except during the aforesaid regular theatrical winter seasons, and at all times and occasions except those at which the grantee, his executors, administrators, or assigns shall be or become entitled, under the preceding provisions of this instrument, to use, occupy, and enjoy the aforesaid section and seat, I and my heirs and assigns shall have the full control and free use and disposal of the same; and it is further agreed that the estates, rights, and easements granted or created under this instrument shall be assignable by the grantee, or by his executors, administrators, or as-

signs, to any respectable person, by an instrument in writing, signed, sealed, and acknowledged by the assignor, and recorded in a book to be kept for that purpose by me, or my heirs or assigns.

"In witness whereof, I hereto set my hand and seal this first day of February, A. D. 1875.                                ARTHUR CHENEY. [Seal.]"

This suit was commenced on the twenty-eighth of July, 1881, by Morse against the defendant, as executrix of Cheney, in the superior court of the state of Connecticut, for Hartford county, and was removed by her into this court. It has been tried before this court without a jury. There are four counts in the complaint. The first, third, and fourth are for breaches of covenants in the lease. The first count recites the contents of the lease, except the clause about fire, and that about assignability, alleges that Cheney died November 1, 1878, and sets forth, as breaches, (1) that after May 11, 1878, the plaintiff was not permitted by Cheney to occupy the seat; (2) that the defendant did not permit him to occupy the seat; (3) that Cheney, after May 11, 1878, during his life-time, discontinued the use of the building as a theater and devoted it to other purposes; (4) that the defendant discontinued the use of the building as a theater and devoted it to other purposes. The third count sets forth a copy of the lease, and avers that Cheney covenanted by the lease that the plaintiff should quietly enjoy the use and occupation of the section and seat during the term of the lease; that the plaintiff paid to Cheney rent in advance for the full term of the lease, being about $1,000; that on or about ———— 1878, the owners of the theater lawfully evicted Cheney, and all holding under him, of whom the plaintiff was one, therefrom, and still withholds possession from him and them and the defendant; and that since that time the plaintiff has not been permitted by Cheney or the defendant to occupy the seat. The fourth count sets forth a copy of the lease, and avers the payment of rent in advance for the full term of the lease, and alleges as a breach that Cheney, from and after May 11, 1878, discontinued the use of the building as a theater and devoted it to other purposes, and the defendant continued to permit it to be devoted to other purposes. The second count recites the contents of the lease as in the first count, and avers the payment of the consideration, $1,000; that Cheney, during his life-time, after May 11, 1878, did not permit the plaintiff to occupy the seat; that the defendant did not permit him to occupy it; that the consideration covenanted in the lease for the payment of the $1,000 failed in whole or in part; and that Cheney had and received said money for the plaintiff's use.

The answer denies all the allegations of breaches and liability, and sets up that the appointment of the defendant as executrix was approved by the proper court of probate on November 15, 1878, and on the same day that court duly passed an order limiting the time of presenting claims against the estate to six months from that date, which time expired May 15, 1879, and the claim of the plaintiff was

not presented to her within that time; that the inventory of the estate amounted to $16,739.78, all of which was exhausted in paying claims and expenses; that on the twelfth of March, 1881, the defendant filed her account, as executrix, with the probate court, showing that the estate was so exhausted, and that nothing remained in her hands, which account was duly approved on that day by the probate court; that she has fully settled the estate and accounted therefor; and that at the time of the commencement of this suit she had not in her hands any property of the estate.

The plaintiff's reply avers that he is an inhabitant of Massachusetts; that Cheney, at the time of his death, was a resident of Manchester, Connecticut; that the defendant was and is a resident of Manchester; that the probate court for Manchester approved her appointment, and passed the orders mentioned in the answer; that the plaintiff's claim was presented and exhibited to the defendant, and against Cheney's estate, within two years after publication of the notice of the order of said court of probate limiting the time for presenting claims, as set forth in the answer; and that Cheney's estate was not represented as insolvent.

At the trial it was understood and agreed between the counsel for the respective parties that the answer should be regarded as setting up as a defense that the right of action herein accrued after the death of Cheney, and that the plaintiff's claim was not exhibited within 12 months after such right of action accrued; and that the plaintiff should be regarded as traversing, by a reply, that defense. The case was tried on a statement of agreed facts, which is as follows:

In addition to the facts admitted by the pleadings, the following facts, claimed by the plaintiff, are agreed by defendant to be true, if admissible, namely:

(1) The several owners of the land in Boston, Massachusetts, occupied by the present Globe Theater, duly leased the same to Arthur Cheney, defendant's testator, by the written leases, certified copies of which are annexed as part of this statement, marked "Exhibits A, B, C, D, and E." Asa P. Morse, lessor named in Exhibit E, also duly executed and delivered the lease recorded in Suffolk Registry of Deeds, vol. 895, fol. 305, a certified copy of which is annexed as a part of this statement, marked "Exhibit F," and Follett, lessee therein named, on April 19, 1869, duly assigned in writing, with the assent of lessor, to said Cheney, the said lease, and all his right, title, and interest therein and thereunder.

(2) Said Cheney, in 1874 and prior to February 1, 1875, removed the old buildings standing on the land embraced in all said leases, and erected thereon, according to the requirements and provisions of said leases, the present Globe Theater, which he used and operated as a theater thereafter during the regular theatrical winter seasons of about 40 weeks in each year during the years 1875, 1876, 1877, and until May 11, 1878.

(3) On February 1, 1875, said Cheney, in consideration of the sum of $1,000 in money then paid to him by plaintiff, Leopold Morse, (who was then, and ever since has been, a resident, citizen, and inhabitant of Boston, Massachusetts,) duly executed and delivered to the plaintiff a written lease of section and seat No. 12 in the portion of said theater called the orchestra, (a copy of said lease being annexed to the complaint, marked "Exhibit A;")

and plaintiff used, occupied, and enjoyed said seat and section according to the terms of the lease to him, during the regular theatrical seasons until May 11, 1878, at which time said Cheney, being in failing health, and having already lost a considerable sum of money by said theater, ceased to give theatrical representations in said theater; and they were never resumed by him before his death, nor since then by his executrix. And said theater remained closed until March 1, 1879, when same was leased to Stetson by the owners, as hereinafter stated in paragraph 5.

(4) On or about November 1, 1878, said Arthur Cheney, who was then a resident, citizen, and inhabitant of Manchester, Connecticut, died, leaving a will, which was duly proved and approved at a probate court held in and for the district of said Manchester on November 15, 1878, and defendant was then duly appointed executrix under said will, which office she then duly accepted, qualifying therefor, and giving official bond as such executrix; and on said November 15, 1878, said court of probate passed an order limiting the time of presenting claims against said estate to six months from said date, and said estate has never been represented insolvent.

(5) On January 1, 1879, rent had become due under and by virtue of each of the ground leases annexed as Exhibits A, B, C, D, E, and F, payment of which was duly demanded and refused. Whereupon, at or about that date and prior to February 10, 1879, said rent being then wholly unpaid, all the the lessors of said leases, in accordance with the provisions thereof and of the laws of Massachusetts, duly entered in and upon their respective estates, and thereby terminated all said leases for such non-payment of rent and breach of condition relating thereto, and took exclusive possession of said premises and theater, evicting defendant, and repossessed themselves as of their former estates, neither the defendant nor any representative of her or of said Cheney's estate being present at nor participating in said proceedings, nor giving actual consent thereto; and said Asa P. Morse immediately thereafter converted the portion of said theater standing on his land into a store, which has ever since been used exclusively for business purposes. On March 1, 1879, all lessors named in said Exhibits A, B, C, and D leased anew, by written leases for a term of about 10 years, all the said premises and theater to one John Stetson, of Boston, who at once took possession thereof and has ever since operated same as a theater; that said Stetson has entered into no obligation with, but has wholly declined to permit plaintiff to in any way use, occupy, or enjoy his said seat and section No. 12 therein, under the said lease thereof to him or otherwise, and plaintiff has always been ready to comply with all the provisions of the said lease to him.

(6) Plaintiff duly presented and exhibited on October 29, 1880, to defendant executrix his claims against the estate of said Arthur Cheney as embraced in this suit, and said defendant executrix disallowed and refused to pay the same, and on March 31, 1881, notified plaintiff thereof, and within four months thereafter plaintiff brought this suit.

(7) Neither said Arthur Cheney during his life, nor the defendant since his decease, has tendered or paid the plaintiff any part or proportion of said sum of $1,000 paid by him, as aforesaid, for said lease of said seat No. 12, but have refused so to do, and the same remains unpaid.

The following facts, claimed by the defendant, are agreed by the plaintiff as true, if admissible:

(1) The plaintiff, at the time of the execution and delivery of his lease from said Cheney, had actual knowledge that said theater was built upon leased land.

(2) At or soon after the time when theatrical performances in said theater, under the management of said Cheney, ceased, he, said Cheney, offered to the plaintiff, and other holders of leased seats, to turn over to them said theater and assign to them his ground leases,—they to assume his obligations

under said leases,—but the plaintiff, and other lessees of seats, declined to accept the same. The whole number of seats in said theater was 1,500, or more, of which 150 were held under leases similar to the plaintiff's.

(3) The probate proceedings in the settlement of said Arthur Cheney's estate are as stated in the defendant's answer, and the inventory and executrix's account therein are made part of this statement, copies being annexed, marked "G" and "H."

(4) Previous to said lease of said seat to the plaintiff, a theater, managed by said Arthur Cheney, standing upon substantially the same leasehold premises, had been destroyed by fire, and said Cheney was unable and unwilling to rebuild said theater without financial assistance; and the plaintiff received said seat-lease, and paid $1,000 therefor, desiring to assist said Cheney to rebuild and equip said Globe Theater, partly from motives of public spirit and the hope of mutual advantage, and not altogether as a commercial transaction.

The facts admitted in the answer are: the execution of the lease, the death of Cheney, and the appointment of the defendant as his executrix. Under the instruments mentioned in the statement of agreed facts, Cheney was the lessee of the land covered by the Globe Theater until June 30, 1892, at ground rents reserved, payable monthly or quarter-yearly. The inventory, G, shows that the appraised value of Cheney's estate was $16,721.23. The account, H, shows an increase over the inventory of $18.55, payments out of the estate amounting to $16,300.97, and a balance in hand, May 30, 1879, of $438.81; that in October and November, 1880, claims against the estate were presented by 53 non-residents, including the plaintiff, amounting to $91,000, based on leases of seats in the Globe Theater, which the executrix had rejected; and that all other claims presented against the estate had been fully paid. The account was exhibited and allowed March 12, 1881.

The plaintiff seeks a recovery principally on the third count of the complaint, which avers that Cheney covenanted, by the lease, that the plaintiff should quietly enjoy the use and occupation of the section and seat during the term of the lease, that is, until the tenth of June, 1892. If there was such a covenant, it has been broken. The question is whether there was any such covenant. There is no such covenant in terms. But the plaintiff contends that the words "demise" and "lease" import a covenant by the lessor that the lessee shall quietly enjoy the demised premises during the term; that the covenant implied is equivalent to a stipulation by the lessor that the lessee shall not be evicted or disturbed by himself or his successors in title, or by virtue of a paramount title; and that an expulsion from, or actual disturbance of, possession constitutes a breach of the covenant.

It is urged by the plaintiff that the language of the lease implies a covenant by Cheney that, during the regular annual theatrical winter season of about 40 weeks, public performances or entertainments shall be given in the theater, to which the plaintiff shall have access under the lease; and that if Cheney does not run the theater for 40

weeks in each year, but discontinues it and ceases so to operate it, he is to pay back a due proportion of the consideration paid.

Whatever would be the effect of the words "demise" and "lease," in the absence of any covenants on the subject of enjoyment, by way of qualification or limitation, it is clear that the express covenants in this lease, in regard to enjoyment, forbid any implication as to a covenant for quiet enjoyment growing out of the use of the words "demise" and "lease." It is covenanted that if the theater is substantially destroyed by fire or other unavoidable casualty, the rights created shall terminate on both sides, and the lessor, and his executors, administrators, heirs, and assigns, be released from all liabilities under the lease. It is also covenanted that if the lessor, or his heirs or assigns, shall at any time elect to discontinue the use of the building as a theater and to devote it to other purposes, he or they shall have the right so to do on paying or tendering to the lessee such proportion of the sum of $1,000 as the time then to elapse before June 10, 1892, shall bear to the full term of 18 years, and all rights created by the lease shall thereupon cease, and the lessor, and his executors, administrators, heirs, and assigns, be released as aforesaid. The destruction of the theater by fire or other unavoidable casualty is to terminate the lease, and in that event the lessee loses all of his $1,000, though this event may happen the day after the lease is made. No provision is made for paying anything back in that case. Then comes a provision for paying something back in a particular event. The theater is built on leased land, which fact the lessee knows, and the leases to Cheney run for a time longer than the lease to the plaintiff. Cheney may choose to devote the theater building to some other use before June 10, 1892, and make it a source of profit in that way. In such case, he is to pay back to the lessee such proportion of the $1,000 as the unexpired time before that date bears to 18 years. Now, with a covenant for the termination of the lease, and the payment of nothing to the lessee, in case of a total destruction of the building, though it should happen the next day, and with a covenant for the payment back of a fixed proportion of the $1,000 in case of a use of the building for other purposes by the lessor, it is not, in the absence of an express covenant for quiet enjoyment during the term of the lease, to be inferred that the lessor agreed, under an implied covenant for quiet enjoyment, to pay back the whole or any part of the $1,000, or to pay any sum as damages, in case of any discontinuance except one of the character specified. Especially is this so in the absence of any covenant to keep the theater open for public performances or entertainments during 40 weeks in each year. The mentioning of the 40 winter weeks is to give to the lessee the right to use the seat only when the theater shall be open during the 40 winter weeks, and to make it clear, in connection with a subsequent clause in the lease, that at all times except when, during the said theatrical winter seasons, the lessee shall be entitled to use the seat,

the lessor shall have the free use of it; as, during a summer theatrical season. In view of all this, the ceasing to give theatrical representations after May 11, 1878, because of the failing health of Cheney, and of his prior loss of money by the theater, was a risk which the lessee and not the lessor assumed.

Both parties knowing that the theater was on ground leased to Cheney, a discontinuance of the use of the building as a theater by Cheney, without a devotion of it to other purposes, would naturally involve non-payment of rent by Cheney, and eviction of Cheney and the plaintiff. Hence, while there is a provision that, in case Cheney should "elect to discontinue the use of the said building as a theater, and to devote it to other purposes," he should refund the proportional part of the $1,000, the election being intentional and voluntary, and involving a use of the building for other purposes, as well as a discontinuance of the use of it as a theater, no provision is made as to a mere discontinuance of the use of the building as a theater, unaccompanied by a devotion of it to other purposes. That might be caused by death, or ill health, or insolvency, and was a risk taken by the lessee. This view of the lease shows, also, that the consideration did not fail in whole or in part. The plaintiff obtained, and has enjoyed, all the rights which the lease conferred.

There is no proof that Cheney or the defendant devoted the building to other purposes after Cheney discontinued its use as a theater. The fact agreed to by the defendant is only that Cheney, being in failing health, and having already lost a considerable sum of money by the theater, ceased to give theatrical representations in it, and they were never resumed by him before his death, nor since then by his executrix. The causes of action set up thus failing, there is no occasion to construe the statute of Connecticut (Rev. 1875, p. 388, §§ 4, 5, 6) in regard to the time within which rights of action must be exhibited to an executor, or to determine when any supposed right of action in this case accrued.

Let a finding for the defendant, and a judgment accordingly, with costs, be entered.